## Copeland et al. *v.* Bruning et al., Trustees.

[No. 6,549.   Filed March 31, 1909.   Rehearing denied June 23, 1909.
Transfer denied October 15, 1909.]

1. JUDGMENT.—*Res Judicata.—Parties.—Capacities.*—Parties to a suit are bound by the decree entered, only in the capacity in which they sue, or are sued.   p. 410.
2. JUDGMENT.—*Res Judicata.—Issues.—Estoppel.*—Parties to a decree are estopped to question any matter litigable in the suit in which the decree was entered.   p. 411.
3. TRUSTS.—*Trustees.—Accounting.—Cestuis que trustent* have no right to an accounting, as to rent, from their trustees unless they have a present right to demand such rents.   p. 411.
4. TRUSTS.—*Purchase of Property by Trustee.—Fraud.—Undue Influence.—Burden of Proof.*—The presumption is that a trustee who purchases his *cestuis que trustent's* property has exercised fraud and undue influence, but when such trustee establishes that the transaction was fair, such sale is held valid and binding. p. 411.
5. WILLS.—*Devises.—Trusts.—Life Estates.*—A will devising real estate to a son "upon trust, during the period of the married life of my daughter" does not convey to such son a greater estate than for the life of such daughter.   p. 412.
6. WILLS.—*Passive Trusts.*—A will devising certain land to testator's son and another, upon trust for testator's daughter and her husband, and authorizing such trustees to give to her and her husband full management thereof, and upon the request of herself, when she becomes a widow, or upon the request of herself, her husband and testator's son at any time, to convey the same to her, gives to her and her husband the active management of such property, and determines the trust upon the agreement of such daughter, husband and son.   p. 412.
7. WILLS.—*Devises.—Alienation.*—Where a testator devised certain land to his son and another, in trust for testator's daughter and her husband, remainder to such daughter provided she survived her husband, and giving power to the daughter, her hus-

band and testator's son to require the trustees to convey to such daughter a fee simple, such daughter and her husband may alienate their interests therein. p. 413.

8. WILLS.— *Devises.— Deeds.—Mortgages.—Estoppel.—*A warranty deed executed by devisees as a mortgage upon the property devised creates an equitable lien upon their interests for the amount of their debt, and the foreclosure thereof estops them from asserting any title to the devised property. p. 413.

9. JUDGMENT.—*Foreclosure.—Estoppel.—*A decree of foreclosure of a warranty deed alleged to be a mortgage, and a deed executed pursuant to a sale under such decree, estop the defendants from afterwards asserting any title, legal or equitable, to the property covered by such deed. p. 413.

10. JUDGMENT.— *Estoppel.— Trustees.— Cestuis que Trustent.—* Where *cestuis que trustent,* under a will devising certain lands to them, give a warranty deed to one of the trustees thereunder as security for a debt, and in a personal suit by such trustee in his individual capacity a decree of foreclosure is entered and the property sold thereunder, such *cestuis que trustcnt* are estopped from maintaining a suit to compel the trustees under such will to account to them for such property, although the trustees, as such, were not parties to the suit for foreclosure. p. 414.

11. JUDGMENT.— *Estoppel.— Foreclosure.—Trusts.—Beneficiaries.—* Where a foreclosure of a mortgage upon trust property was ordered, and the mortgagee instituted a suit to enjoin the *cestuis que trustent* from maintaining a suit against the trustees for an accounting, the court holding that the injunction would not lie, since there might be a surplus, on a sale, to which such suit for an accounting might apply, such judgment does not estop such mortgagee from asserting that the *cestuis que trustent* are estopped by the decree of foreclosure from claiming title to the trust property. p. 417.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Suit by Clara Copeland and another against William H. Bruning and another, as trustees under the will of John F. Bruning, deceased. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*Pickens, Moores, Davidson & Pickens, W. T. Friedley* and *Vanosdal & Francisco,* for appellants.

*F. Winter* and *Bernard Korbly,* for appellees.

RABB, J.—This was a proceeding brought by the appellants against the appellees, to compel an accounting by ap-

pellees of an alleged trust claimed to have been created by the will of John Frederick Bruning, naming the appellants as the *cestuis que trustent.*

Each of the defendants filed separate paragraphs of answer. Appellants' demurrer to the second and third paragraphs of each of the answers was overruled, and exception reserved, and this ruling of the court presents the only question raised upon the appeal.

These pleadings set forth the following state of facts: John F. Bruning was the father of appellant Clara Copeland, and of appellee William H. Bruning. They were his only children. John F. Bruning died, testate, in October, 1891, seized in fee of certain real estate, which is described in the pleadings. By his will he devised certain parcels of the real estate to William H. Bruning and Nicholas Horuff, as trustees,

"upon trust, during the period of the married life of my daughter Clara, wife of William M. Copeland, to apply the whole of the annual income, after paying taxes, insurance and necessary repairs of said trust premises, for or toward the support and benefit of my said daughter and her husband, and I authorize said trustees, and the survivor of them and their successor or successors in said trust, to delegate the management, repair and collection of rents from and application thereof to my said daughter Clara and her husband by a written instrument, to be executed by said trustees and my said daughter and her husband in duplicate, one copy thereof for them and the other for said trustees, which shall exonerate said trustees from any and all liability whatever in reference to the care, repair, management and renting of said trust property and the collection and application of the rents thereof during the period of time specified in such written instrument, which may be renewed from time to time by written indorsement thereon signed by said parties. When my said daughter shall become a widow, or when she, her husband and my son William H. Bruning shall jointly, by an instrument in writing, request said trustees, or the survivor of them or their successor or successors in said trust, to convey and transfer any portion or all of said

trust property to my said daughter Clara Copeland, said trustees shall in such event at once convey the same to her in fee simple by deed, in which said written request shall be recited, and such deed of conveyance shall vest the title to the real estate so conveyed to her in fee simple free from said trust.''

The will appointed appellee William H. Bruning as executor. Said will was duly probated, and appellee William H. Bruning duly qualified as executor. After the will was probated and the executor had qualified, the appellants conveyed to appellee William H. Bruning, by warranty deed, the premises mentioned and described in that provision of the will creating the trust in favor of the appellants, which deed was executed by said parties to said Bruning and received by him for the purpose of securing and indemnifying him against a liability on account of becoming surety for Mrs. Copeland upon certain notes. Afterwards, in July, 1893, the appellants commenced a suit in the Jefferson Circuit Court against appellee William H. Bruning for the partition of all of said real estate, which was, upon the petition of said Bruning, removed to the United States Circuit Court for the District of Indiana. In the complaint it was averred that John F. Bruning had died intestate, the owner in fee simple of said premises and other lands, leaving appellant Clara Copeland and appellee William H. Bruning as his sole heirs at law; that the execution of the deed last mentioned, from appellants to appellee Bruning, was procured by fraud, and that it was given to secure a debt. The appellants prayed a partition of the land, that the deed be declared a mortgage, and that an accounting be had between the parties.

To this complaint appellee Bruning answered, admitting the averments with reference to the relationship of the parties, the death of John F. Bruning, and that at the time of his death he owned the premises in fee simple; admitting the execution of the deed from appellants to said appellee, and that the deed was intended to secure said appellee as

indorser for appellant Clara Copeland, as averred in her complaint, but denying that John F. Bruning died intestate, or that said deed was procured by fraud, to which pleading the appellants filed a reply.

Afterwards, in June, 1895, appellee Bruning filed a cross-complaint against the appellants, alleging that John F. Bruning died testate; that by his will he devised the land in question in the manner set forth in the answer theretofore filed, a copy of the will being made a part of the cross-complaint; that the execution to him by appellants of the deed for said premises, as set up in the original complaint and answer, and as therein also alleged, was intended as a mortgage to secure said appellee on account of his suretyship for appellant Clara Copeland on certain notes which it was averred he was compelled to and did pay; that there existed an indebtedness against the estate of the testator which the personal estate was insufficient to pay, and which was paid by appellee Bruning; that such indebtedness was a charge upon all of the real estate of the testator; that said appellee had paid taxes upon the trust property, amounting to a certain sum, and praying a foreclosure of said mortgage, and a decree of court charging a certain portion of the indebtedness and the taxes paid by him as a lien upon said trust property, and that said premises be sold to pay and discharge the sums so due him.

Upon the application of the appellees, a receiver was appointed, to receive the rents and profits of the premises pending said litigation. In said proceedings a decree was entered in favor of the appellees and against the appellants on all the issues therein presented, and a decree entered charging said trust property with the sums found due to appellee Bruning on said mortgage, taxes, and other matters claimed to be due to him against said property, and foreclosing all of appellants' right, title and interest therein, and directing the sale of said premises to pay the amount found due to said appellee; that, in pursuance of said decree, the premises

were afterwards sold by the master commissioner appointed for that purpose, and appellee Bruning became the purchaser; that such sale was duly reported to the court and duly confirmed by it, and a deed to said appellee duly ordered thereon, and duly executed by said master. It further appears that appellee Horuff never accepted the trust created by said will; that appellants have received all of the rents of said trust property up to the time the receiver was appointed by the court, and that thereafter such receiver collected the rents on said property, and duly accounted for them to the court in his final report, and that after he made such final report he was discharged by the court.

It is contended by appellee Bruning that the proceedings and decree in the federal court are a conclusive adjudication of all matters sought to be determined in this proceeding, and a complete estoppel against the appellants' waging the same. Appellants, on the other hand, contend that such decree and proceedings are not such estoppel, for the reason that the appellees were not parties to the proceedings in the federal court in their capacity as trustees of the estate devised to them by the will of John F. Bruning; that is, that in appellee Bruning's cross-complaint against the appellants, to foreclose his alleged lien upon said trust property, he failed to make himself a party defendant thereto in his capacity as trustee, and that therefore the trust is not bound by the adjudication; that the decree of the court in that cause can only be considered res adjudicata against the parties in the right and capacity in which they appear in that court.

It is the settled law that parties to a judicial proceeding are bound by the decision and judgment in such proceeding, in the capacity and right in which they appear, and

1. not otherwise. *Craighead* v. *Dalton* (1886), 105 Ind. 72; *Erwin* v. *Garner* (1886), 108 Ind. 488; *Jones* v.

*Vert* (1889), 121 Ind. 140, 16 Am. St. 379; *Johnson* v. *Graves* (1891), 129 Ind. 124.

It is also equally the settled law that parties to a judicial proceeding are, in the capacity and right in which they appear, concluded by the decision and judgment rendered in such proceeding, and this includes not only questions that were actually litigated and determined, but all such as might, under the issues, have been litigated and determined between them. *Fischli* v. *Fischli* (1825), 1 Blackf. *360, 12 Am. Dec. 251, and the multitude of cases that follow it.

If the appellants succeed in this proceeding, it must be because they have a present right to demand from the appellees an accounting of the rents of the trust property received by them. If they are in no position to demand such accounting, they have no standing in court. 22 Ency. Pl. and Pr., 95, and cases cited.

The appellees contend that, on account of the matters set up in their respective answers, the trust, so far as appellants are concerned, and all their rights under it, has terminated.

While a trustee may not buy the trust property at his own sale, nor do any act inconsistent with the duties of his trust, and the law requires at his hands the strictest honesty and good faith in his dealings with his *cestui que trust,* still it does not prohibit dealings between the trustee and the *cestui que trust* with reference to the trust property, if the *cestui que trust* be *sui juris.* And when contracts between the trustee and the *cestui que trust,* having the effect, as between them, to terminate the *cestui que trust's* interest in the subject of the trust, and such interest was of a nature that it could be disposed of by him, and he is *sui juris,* and the contract openly entered into is fair and reasonable, untainted by fraud or undue influence, such contract, and the rights of the parties under the same, will be upheld both at law and in equity, precisely as would any other contract entered into between other persons sustain-

ing no such relations. The law looks upon such contracts
with a jealous eye, and presumes, as against the trustee, that
they were procured by fraud and the exercise of undue in-
fluence; yet when this jealousy of the law has been satis-
fied, and these presumptions overcome, the contract is bind-
ing upon the parties. *Coles* v. *Trecothick* (1804), 9 Ves.
*234; *Mills* v. *Mills* (1894), 63 Fed. 511; *Bryan* v. *Duncan*
(1852), 11 Ga. 67; *Barnard* v. *Stone* (1893), 159 Mass. 224,
34 N. E. 272; *Brown* v. *Cowell* (1875), 116 Mass. 461;
*Brownfield's Estate* (1899), 193 Pa. St. 151, 44 Atl. 246;
*Miggett's Appeal* (1888), 109 Pa. St. 520; *Bresee* v. *Brad-
field* (1901), 99 Va. 331; *Marshall* v. *Stephens* (1847), 8
Humph. (Tenn.) *159, 47 Am. Dec. 601; *Buell* v. *Bucking-
ham & Co.* (1864), 16 Iowa 284, 85 Am. Dec. 516; Hill,
Trustees (4th Am. ed.), *537; 1 Perry, Trusts (5th ed.),
§195.

The interest which the will of John F. Bruning gave to
appellee Bruning was, to say the least, an estate during the
life of appellant Clara Copeland. 2 Jarman, Wills,
5.    381; *Thompson* v. *Schenck* (1861), 16 Ind. 194; *Stout*
v. *Dunning* (1880), 72 Ind. 343; *Hunt* v. *Williams*
(1891), 126 Ind. 493; *Thompson* v. *Murphy* (1894), 10 Ind.
App. 464.

The will imposed no active duties upon the trustees. It
contemplated not only that the appellants should receive all
the rents and income of the property during the mar-
6.    riage relation of Clara Copeland, and when that re-
lation was dissolved she should take the entire title,
but that appellants should have the active management of
the property. It was manifestly not the purpose of the
testator, by the creation of this trust, to impose upon the
trustees the duty of looking after the property and the col-
lection of the rents, to insure the same against the wasteful
extravagance of the *cestuis que trustent.* It very evidently
was his purpose in creating the trust to insure the devolu-

tion of the title to the premises described in this provision of his will to those of his own blood, in preference to his son-in-law, in case his daughter died without issue. The express terms of the will provide for the termination of the trust upon the agreement of the appellants and appellee Bruning to that effect.

The appellants being *sui juris,* the estate created in their favor by the will in question is one they could dispose of by contract; could sell or mortgage; one of which they

7. might be deprived by the judgment of a court of competent jurisdiction, with their rights therein properly before it for adjudication. Their warranty deed to appellee Bruning for the premises, given to secure him as in-

8. dorser for appellant Clara Copeland upon notes for $5,000, created an equitable lien and charge upon their interest in the premises for whatever sum appellee Bruning was compelled to pay upon said obligations, and was an effectual estoppel against appellants, personally, from asserting any interest whatever in the premises as against the title so conveyed by such mortgage.

The federal court has adjudged that this transaction was fair, just and free from fraud or undue influence. The interest of the appellants in the trust property might

9. be subject to equitable liens in favor of appellee Bruning, or any other person. Said appellee asserted that they were so owing to him, and specifically set out his claims in that respect, properly brought the appellants before the federal court, and there challenged them to contest his asserted right; and, being thus challenged, they were bound to produce all their defenses, legal or equitable, to said appellee's demands; and the judgment of the court therein is absolutely conclusive upon the appellants as to every question which might have been litigated therein.

But appellants insist that appellees were not before that tribunal in their capacity as trustees, and that therefore the

trust is not bound by the adjudication, that it still subsists, and that in this proceeding it is the trust that is involved, and not the appellees personally. We do not agree with this contention. In this case the appellants appear in their personal capacity, precisely as they appeared in the federal court, and they are here seeking to enforce the same personal right that they were there called upon to defend. As we have already stated, unless they have a personal right and interest in the trust they seek to enforce, they have no standing in court. If they in any manner have estopped themselves from asserting a personal right in the trust, they cannot appear on behalf of some possible remote *cestui que trust*, and demand an accounting, or any other relief against the trustee. *Killinger* v. *Hartman* (1887), 21 Neb. 297; *Kuhler* v. *Hoover* (1846), 4 Pa. St. 331; *McCabe's Appeal* (1853), 22 Pa. St. 427; *Clarke* v. *Deveaux* (1869), 1 S. C. 172; *Coffman* v. *Sangston* (1871), 21 Gratt. 263; *Ball* v. *Carew* (1832), 13 Pick. 28; *Keene's Appeal* (1869), 60 Pa. St. 504; *Wagener's Estate* (1899), 190 Pa. St. 513, 42 Atl. 955; *Woodbridge* v. *Bockes* (1902), 170 N. Y. 596, 63 N. E. 362.

This last case is cited and relied upon by the appellants. We think it strongly in point in support of the proposition before announced. In that case the testator by his will bequeathed an estate valued at $150,000, consisting principally of invested funds, to a trustee named in the will, to be by him held and managed, charging the trustee with the duty of collecting the income thereof, holding it as part of the trust estate, paying to his only daughter from such income an annuity of $3,500 and no more, and providing that upon the death of his daughter the trust estate should go to her children, if she left any surviving, and in case she died without issue or their descendants surviving then the trust estate to go to his heirs at law. The trustee qualified as such, but, instead of executing the trust, turned over all the trust property to the daughter and her husband, who executed releases

to the trustee, in which her children, who were of age, joined. The daughter and her family dissipated the trust property in riotous living. Then she procured herself to be appointed as a substituted trustee, and in this capacity instituted a proceeding in the court of chancery, to compel the former trustee named in the will to account for the trust estate he had thus permitted her and her husband to squander. The court, in deciding the case, said: "Of course, it follows that she has no possible claim for any accrued income of the trust. * * * She cannot demand an accounting in the right of her children, * * * because, when of full age, they joined with her in releasing the defendant. * * * What right has she to call him to account? By an impersonal right? But that means that, notwithstanding her complicity in the course which has led to this result, * * * she may be recognized in her assumed office of trustee and may be accorded a right, which, personally, she has forfeited, morally, as well as legally. That cannot be. * * * The plaintiff may represent the trust estate; but she does not represent the remaindermen. She is not their trustee."

Here, the acts of the appellants in conveying the trust estate to the trustee, to secure him as indorser for them, were as effectually a release of any obligation upon him to account for rents, as though the instrument, in place of its being in the form of a deed, had been in the form of a release of all obligations to account for such rents and profits; and the decree of the federal court, to which they were parties, operated upon the appellants as an estoppel personally to assert any right to the rents and income of the trust property, as effectually as would a formal release.

In this case appellants make no pretense of appearing "impersonally;" as representatives of the trust, as the appellant in *Woodbridge* v. *Bockes, supra,* assumed to do, but appear personally, and in right of a personal beneficial interest they claim in the trust property. Not only are the appellants appearing in this case in their personal capacity, and to en-

force a personal right, but the appellees are also in court in their personal capacity, and defending, not as trustees, nor by virtue of any right they held under the trust, but are asserting a personal defense they claim against any right appellants advance to a decree of the court requiring such trustees to account for the rents of the trust property. The question presented is whether there is a trust in existence that appellants are in a position to enforce, and is dependent upon the rights of the parties as against one another. If the trustees were suing, in virtue of their office, to enforce some right claimed to be due to the trust, or if they were sued by some one who asserted a right against the trust, and they were defending the trust, in that case they would be before the court in their "impersonal" representative capacity, and the decree entered in such proceeding would be binding in favor of and against the trust alone, and would not be binding either in favor of or against the trustees personally. In such proceeding no decree entered in favor of or against the individual trustees would have any binding effect upon the trust they represented.

In this case the decree entered by the court below is in nowise binding upon the trust estate, but it is binding on appellants, and had a decree been entered in favor of appellants it would have been binding and operative against the appellees personally. The appellants would have been entitled, under the facts stated, not only to an accounting of rents, but to a personal judgment against the appellees in their favor for whatever sum such accounting would show was due to them on account of rents of the trust property which they had collected, and to which the appellants were entitled.

We conclude that, as against the appellants, the decree of the federal court and the sale of trust property thereunder effectually terminate the trust which appellants seek to enforce, and estop appellants from asserting any right to re-

quire the appellees to account for the rents of the trust property.

The judgment of the court below is affirmed.

Watson, C. J., does not participate in the decision of this case.

## ON PETITION FOR REHEARING.

RABB, J.—In appellants' petition for rehearing it is claimed that the judgment of the court rests upon a misconception of the facts as they appear in the record, and it is asserted that the deed executed by the appellants to appellee Bruning, and which was held to be a mortgage and foreclosed as such by the federal court, was not executed, as the court states in its opinion, subsequent to the probate of the will of John F. Bruning, but was executed seven years before the probate of the will.

The court's attention is called to no place in the record where the date of the execution of this deed appears. It was manifestly not executed prior to the execution of the will, or the death of the testator. The court was in error about the deed's having been executed subsequent to the probate of the will. The will, it seems from the facts presented in the record, was offered for probate in the year 1893, and was followed by litigation that extended until 1898, when it was finally admitted to probate; and it seems that the deed in question was executed sometime pending this litigation, but this fact does not in anywise change the legal aspects of the questions presented by the record.

It is also insisted that the decision of this court contravenes the decision of the federal court in an action between the same parties. *Copeland* v. *Bruning* (1904), 127 Fed. 550, 63 C. C. A. 435. This court holds that the decree of the federal court in the case of *Copeland* v. *Bruning, supra,* estops appellant Copeland from maintaining this suit. The decision of the federal court was made upon

an application to enjoin the prosecution of these suits. That court, in refusing the injunction, said: "It is said in maintenance of the injunctional order appealed from, that the suits enjoined were an attempt to interfere with the corpus of the property in the hands of the federal court; and, to establish this proposition, it is urged that the debt found due, with costs of suit, are more than enough to exhaust the property, to foreclose the lien on which the decree was entered. These facts, it is urged, constitute an extinguishment of the trust. But no such fact was in the record at the time the decree was entered. The sale had not yet taken place, and it was not known that there would be no surplus. Indeed, provision for surplus was made in the decree to be paid over to the trustees under the will. The suits in the state court related, among other things, to such surplus, and to that extent, at least, lay outside the jurisdiction of the federal court. But it is said the suits in the state court were not limited to such surplus—that, in effect, they challenged the decree of the federal court under which the debt was established and the accounting settled. Let this be admitted; even then the injunction is not justified, for, to the extent that the subject-matter of the suit in the state court was already settled by former adjudication, the defense should have been by plea in the court where the suits were brought, and not by injunction in another jurisdiction." This is precisely what was done in this case. The plea of former adjudication was set up as a defense here, and this plea this court holds good.

There is no lack of harmony between the decision of this court and the federal court, and we think there are no grounds justifying this court in granting appellants' petition for a rehearing, and the same is overruled.

Watson, J., not participating.